IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAMELA J. GRAFFICE,

                     Plaintiff,                 OPINION AND ORDER

      v.                                      08-cv-528-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Pamela J. Graffice seeks reversal of the commissioner's determination that she was not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).  Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because he disregarded the opinions of plaintiff's treating physicians, did not properly consider her mental and physical impairments, made an improper credibility finding and did not correctly determine her residual functional capacity.  I find that the administrative law judge properly considered the opinions of plaintiff's treating physicians and her mental and physical impairments.  Further, I find that he properly assessed plaintiff's credibility and properly

determined her residual functional capacity.  For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.   Background and Medical Evidence

Plaintiff was born on October 3, 1955.  AR 754.  She graduated from high school and has taken some college classes.  AR 757.  She served actively in the military for four years and then in the reserves for another 18 years.  After retiring from the military, she worked as an electronics maintenance person at Menard's.  Plaintiff injured her back at work in 1999 and has had pain and associated depression ever since.  She applied for disability insurance benefits on April 11, 2005, alleging disability beginning December 31, 2004 because of thyroid and back problems, asthma, depression and memory deficits.  AR 85, 97.

Plaintiff received treatment for her back and depression at the Veteran's Administration Medical Center in Minneapolis, Minnesota.  Although she was initially thought to have a herniated disc as a result of her work injury, after several months of treatment her condition improved and she was returned to light duty, with no evidence of nerve root impingement present.  AR 199-203.  A magnetic resonance imaging scan of plaintiff's spine in 2003 showed only some mild degenerative changes.  Plaintiff was followed

2

for her residual back pain by physician's assistant Theresa Huber, who prescribed medication.

On July 15, 2005, Huber reported that plaintiff wore compression stockings on her legs and that she had no remarkable swelling. She indicated that plaintiff's back pain was well controlled with the use of MS contin. AR 403. In 2006, Huber reported again that plaintiff's back pain was well-controlled with medication. AR 694.

In April 2006, plaintiff was seen in the emergency room for low back pain. Plaintiff's neurological examination was normal and plaintiff exhibited full strength in her lower extremities. Dr. Kristopher Lund diagnosed plaintiff with low back pain secondary to poor posture with "crook shank back." AR 675-76.

Plaintiff was followed for her depression by psychiatrist Dr. William Spring and clinical psychologist Linda Van Egeren. On January 24, 2005, Spring noted that plaintiff was mildly depressed, with her affect full and her thought flow normal. Spring diagnosed major depression and prescribed medication for her. AR 286.

On March 22, 2005, Spring wrote a letter to plaintiff, noting that she had been "having significant trouble with [her] memory, reasoning and ordinary cognitive functions such as performing simple arithmetic" that was hindering her daily activities and making it difficult for her to interview for a new job. AR 454. Spring indicated that plaintiff's problems may have been caused or exacerbated by a thyroid abnormality that had recently

showed up on plaintiff's lab tests.  Spring indicated that plaintiff was temporarily disabled from the condition from January 1 though May 31, 2005.  AR 454.

On April 25, 2005, plaintiff told Spring that her mood was a little better.  Spring noted that her mood was moderately depressed but that her affect had improved.  He diagnosed major depression in partial remission.  AR 272.

In July 2005, Van Egeren noted that plaintiff was feeling good about herself and initiating increased social contacts.  AR 473.  When plaintiff saw Van Egeren in January 2006, she reported she was generally doing fine but continued to struggle with her sleep, hoarding issues and interpersonal problems.  AR 692-93.

On October 31, 2005, Spring wrote a letter, verifying that plaintiff had been in treatment for major depression and obsessive-compulsive disorder.  He noted that she was taking medication and participating in psychotherapy.  He concluded that she would not be competitive in the job market for at least six months and possibly a year.  AR 450.

From May 2006 through January 2007, Spring described plaintiff as mildly depressed, with her depression in partial remission.  AR 608, 629, 647, 673.  On August 14, 2006, plaintiff reported that she had been quite busy with her garden and that her partner was helping her with the garden. AR 647.  In November 2006 plaintiff reported that she planned to resume breeding and showing dogs.  She also reported that, after strenuous activity, including cutting wood or coming to the hospital for appointments, she had to stay in bed

the next day.  AR 628-29.  In January 2007, plaintiff told Spring that she was looking forward to showing her dogs in the spring.  AR 608.

In May 2007, plaintiff underwent a consultative psychological evaluation by Julia N. Perry.  Plaintiff denied difficulties with memory and was fully oriented.  Plaintiff reported that she was generally able to feed the animals on her farm, including two horses, two donkeys, two llamas, a goat and 12 dogs and she enjoyed going to dog shows.  Perry noted that plaintiff's symptoms descriptions were often vague and inconsistent and that it appeared that she met the criteria for a dysthymic disorder, but not a major depressive disorder.  In addition, although plaintiff reported significant concentration problems, Perry noted that during the interview plaintiff appeared not to be listening to Perry's questions, which Perry suspected might be contributing to her alleged concentration problems.  Perry also questioned plaintiff's motivation to make changes, insofar as plaintiff reported that if she remained off work, she would likely be eligible for 100 percent service-connected disability.  Perry diagnosed plaintiff with dysthymic disorder and obsessive compulsive disorder.  AR 737-743.

On October 2, 2007, Spring wrote a letter summarizing plaintiff's condition.  He noted that although a number of minor improvements had been made, her overall situation was not much different from what it had been two years earlier.  He doubted that plaintiff could sustain a regular work schedule or even part-time work.  AR 736.

5

B.  <u>Consulting Physicians</u>

On June 20, 2005, Dr. Robert Dohlman performed a consultative examination of plaintiff for the state disability agency.  On examination, plaintiff exhibited limited ranges of spinal motion but had normal motion, strength and sensation throughout her arms and legs.  Plaintiff was able to multiply, add and subtract serial sevens.  AR 392.  Dohlman concluded that plaintiff would not be able to work without severe restrictions regarding lifting, pushing, pulling, bending and stooping.  He also concluded that plaintiff's memory deficits would restrict her to simple work and that she would need to change her position every two hours.  AR 389-93.  An x-ray of plaintiff's lumbar spine was normal.  AR 394.

On June 28, 2005, Marcus Desmonde performed a mental status evaluation of plaintiff for the state disability agency.  Plaintiff reported to Desmonde that although she did chores around the farm and had a dog that she raised and showed, she had other people do the work for her.  She also reported that she was able to do basic housekeeping with rest and that she had a social support system consisting of neighbors, family and a few close friends.  AR 397.

Desmonde reported that plaintiff was oriented times three, could recall seven numbers forward and four numbers in reverse, could add and subtract serial sevens from 100 quickly and accurately and could recall three of three unrelated objects immediately after three

6

minutes and again after 30 minutes.  AR 398.  Desmonde indicated that even though plaintiff complained of memory difficulties, her short-term and long-term memory at the time of the evaluation were average to above average.  He stated, "It is more likely that any memory or concentration problems are functional in etiology and related to her feeling overwhelmed by her current living situation and lack of income."  Desmonde estimated that her global assessment functioning score had been 60-70 in the last six months.  AR 398.

Desmonde concluded that plaintiff appeared capable of understanding simple to very complex instructions and interacting with co-workers, supervisors and the general public.  He indicated that she might have difficulty tolerating the stress and pressure of full-time competitive employment and that her employability would be enhanced if she were able to complete a pain management program.  AR 399.

On August 15, 2005, state agency physician Pat Chan completed a physical residual functional capacity assessment for plaintiff, finding that she had back pain.  He found that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, stand or walk two hours in an eight-hour work day and sit six hours in an eight-hour work day.  AR 441-48.

On January 23, 2006, state agency physician Syd D. Foster completed a physical residual functional capacity assessment for plaintiff.  He listed plaintiff's diagnoses as back pain and affective disorder.  He found that plaintiff could lift 20 pounds occasionally and

10 pounds frequently and sit, stand or walk six hours in an eight-hour work day.  He also found she could stoop and crouch occasionally.  He indicated that his restrictions were not consistent with those found by Dohlman in 2005.  AR 520-26.

On August 17, 2005, state agency psychologist Roger Rattan completed a Psychiatric Review Technique Form for plaintiff and concluded that she had an affective disorder.  AR 423.  He found that plaintiff had mild difficulties in the activities of daily living, moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace.  He found that plaintiff had had no episodes of decompensation.  AR 433-34.  On January 23, 2006, state agency psychologist William Merrick completed a psychiatric review technique form for plaintiff, finding that she had an affective disorder and an anxiety-related disorder.  AR 502.  He found that plaintiff had mild difficulties in the activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace.  He further found that plaintiff had no episodes of decompensation.  AR 512-13.

## C.  Hearing Testimony

At the administrative hearing, plaintiff testified that she stood five feet five inches and weighed 211 pounds.  AR 754.  She testified that she received a monthly disability payment of $1,130 a month from the Veteran's Administration because of residuals from a fractured

skull she had sustained while on active duty.  AR 755.  She testified that she stopped working because she was fired for coming in late.  AR 768.

Plaintiff testified that she owned some llamas and horses and had six dogs, but that she no longer bred or showed dogs.  AR 760.  She did some laundry, washed some dishes and did paperwork, including paying her bills and balancing her checkbook.  AR 764-65.  She lived with her boyfriend and saw one female friend on a regular basis.  AR 763.

Plaintiff explained that her main problem was her back pain.  She said that in 2003, her doctor had given her work restrictions, which were that she should lift only 25 pounds occasionally and 10 pounds frequently; limit repetitive activities such as mopping and vacuum cleaning to no more than 15 minutes; and bend and stoop only occasionally.  She testified that a doctor had prescribed a cart (rolling walker) for her, which helped her to walk for exercise.  AR 772, 774.  She said she could sit for an hour at a time and stand for about 15 to 20 minutes at a time.  AR 773.  She could bend and climb stairs occasionally but could not squat.  AR 775-76.

Plaintiff testified that she saw a psychologist and took medication for her compulsive behaviors and depression.  AR 779.  Plaintiff testified that she did not have any side effects from her medications that would interfere with her ability to do work activities.  AR 781.

The administrative law judge called Dr. Robert Mulhausen to testify as a neutral medical expert.  Mulhausen offered a summary of plaintiff's medical records.  He testified

that plaintiff had chronic low back pain and mild degenerative disk disease at L5/S1 and L4/L5. He noted that although plaintiff had had a small disc herniation on the left after an injury in October 1999, the condition had resolved itself, with the most recent magnetic resonance imaging scan showing only mild degenerative changes. He noted that although plaintiff reported continuous back pain, examinations had been mostly negative. AR 793. He found no medical evidence supporting plaintiff's need for a walker apart from her complaints of chronic pain. AR 795. Mulhausen also testified that plaintiff had obesity, periarticular fibrositis, hypothyroidism, a history of venous insufficiency, asthma by history and mild to moderate chronic obstructive pulmonary disease, probably secondary to her nicotine dependence. He also indicated plaintiff had been diagnosed with psychological disorders, including depression, obsessive compulsive disorder and a personality disorder.

Mulhausen concluded that none of plaintiff's physical impairments met a listed impairment. AR 794. From the medical evidence relating to her physical impairments, Mulhausen determined that plaintiff was capable of performing light work with a sit or stand option every hour. He also found she could climb and stoop occasionally, could not crouch or crawl and should avoid heat, machinery, hazards, heights, chemicals, dust and gases and fumes. AR 796-97.

The administrative law judge called Richard Willette to testify as a neutral vocational expert. AR 800. The administrative law judge asked Willette to assume an individual of

plaintiff's age, education and work experience who could perform light work with a brief change of position hourly, no ladders or crawling, occasional stairs, bending, stooping and crawling. In addition, Willette was asked to assume that the individual could perform only work that was relatively simple, routine and repetitive; required only brief superficial contact with supervisors, co-workers and the general public; and was relatively low stress without high production goals. The expert testified that individual could not perform plaintiff's past jobs but could perform 21,240 jobs in Wisconsin as a hand packaging inspector and 2,330 jobs as an office helper. The expert testified that his testimony was consistent with the Dictionary of Occupational Titles and his experience. AR 802-03.

## D. The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. See 20 C.F.R. § 404.1520. At step one, he found that plaintiff had not engaged in substantial gainful activity after her alleged onset date of December 31, 2004. At step two, he found that plaintiff had severe impairments of a history of low back injury with a small disc herniation at L3 with resolution of the lesion, mild degenerative disc disease of the lumbar spine, periarticular fibrositis, obesity, hypothyroidism, a history of venous insufficiency, a history of asthma, a history of mild to

moderate chronic obstructive pulmonary disease, a major depressive disorder, an anxiety disorder and a personality disorder.  AR 21.

Relying on Mulhausen's testimony, the administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  The administrative law judge also determined that plaintiff's medically determinable mental impairments did not meet or equal a listed impairment.  AR 15.

With respect to plaintiff's mental impairments, the administrative law judge considered whether they satisfied the criteria of the listings by rating the degree to which her impairments limited her ability to function, as required under the special technique set forth in 20 C.F.R. § 404.1520a(b) and (c).  Reviewing the evidence in detail, he concluded that plaintiff had mild restrictions of the activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence and pace and no episodes of decompensation, which meant that none of her mental impairments were severe enough to satisfy the listings.  (In general, a claimant who has "marked" functional loss in two or more categories will meet the criteria for a listed impairment.  See generally 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00 (the listings for mental disorders).)  In reaching these conclusions, the administrative law judge noted that plaintiff had told medical sources and reported on her activities questionnaire that she was able to care for herself, cook, do household chores,

12

shop, do yard work, fix things, work in her garden, care for her dogs and feed the animals on her farm. AR 15. With respect to social functioning, he noted that plaintiff did not have good relationships with her sisters but had good relationships with two of her neighbors and had been attending church activities; further, there was no evidence that plaintiff had experienced significant ongoing difficulties getting along with others. AR 15-16. As for concentration, persistence or pace, the administrative law judge noted that neither of the doctors who performed consultative evaluations of plaintiff found her to have any memory problems and he observed that she had been able to complete serial seven additions and subtractions quickly and accurately.

As a predicate to his conclusion at step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform light work (lifting 20 pounds occasionally and 10 pounds frequently, standing and walking up to six hours in an eight-hour work day and sitting for up to two hours), with a brief position change every hour; with no ladders or crawling; occasional stairs, bending, stooping and crouching; performing relatively simple, routine and repetitive tasks; with no high production goals; and only brief and superficial contact with coworkers, supervisors and the public. AR 16. In reaching this conclusion, the administrative law judge gave significant weight to Mulhausen's opinion, finding it to be generally consistent with the objective evidence in the record. The

administrative law judge found plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible.  AR 22.

At step four, the administrative law judge found that plaintiff was not able to perform her past work.  At step five, he adopted the vocational expert's opinion that there were jobs existing in Wisconsin that plaintiff could perform, namely inspector /hand packager and office helper.  Therefore, he found that plaintiff was not disabled.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on

14

the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

### B.  Treating Physicians' Opinions

Plaintiff argues generally that the administrative law judge gave too much weight to Mulhausen's opinion and not enough to those of her treating physicians.  As the commissioner points out, plaintiff fails to identify which treating physicians she is referring to or what specific evidence the administrative law judge failed to consider.  Plaintiff merely states that "[t]he ALJ erroneously placed excessive weight on the opinion of Dr. Mulhausen and failed to properly grant controlling weight to plaintiff's treating physicians, whose opinions and diagnosis are supported by substantial evidence in the record."  Dkt. #6, at 3. In support, she cites to the entire 600 pages of medical records.  It is plaintiff's job, not this court's to ferret out the evidence in the record that supports her claim.  Because plaintiff has failed to develop this argument adequately, it is waived.  Kramer v. Banc of America

15

Securities, LLC, 355 F.3d 961, 964 n.1 (7th Cir. 2004) (perfunctory and undeveloped arguments are waived).

Even if plaintiff had properly developed her argument, it would fail. Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions and must evaluate them in the context of the expert's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. § 404.1527(d) and (e). An administrative law judge can reject a physician's opinion if his reasons for doing so are supported by substantial evidence in the record. Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003). When the record contains well supported contradictory evidence, even a treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006); 20 C.F.R. § 404.1527(d)(2).

In this case, the administrative law judge discussed the medical opinions in the record that were favorable to plaintiff and explained how he was weighing them. One such opinion was offered by Dohlman, the consulting physician who opined that plaintiff could do no bending or stooping, would need severe limitations on her ability to lift, could not work in a hot environment because of her hypothyroidism and could not perform a job requiring more than minimal math or memory skills because of her memory problems. The

16

administrative law judge did not give Dohlman's opinion significant weight because it was based largely on the plaintiff's own reports of her symptoms and pain and was inconsistent with the objective medical evidence, which indicated that plaintiff had only minimal degenerative changes in her lumbar spine, and with Dohlman's own examination notes, which indicated that plaintiff could multiply, add and subtract serial sevens without difficulty.  AR 21.  These reasons are supported by the record and provide a logical path to the administrative law judge's determination to discount Dohlman's opinion.

The administrative law judge also committed no error when he rejected the opinion of Spring, plaintiff's treating psychiatrist, who indicated on a number of occasions that plaintiff could not work competitively because of her mental impairments.   As the administrative law judge noted, Spring's opinion was inconsistent with the objective evidence in the record, which indicated that plaintiff's mental impairments caused only mild to moderate symptoms; with Spring's own treatment notes, which indicated that plaintiff's depressive disorder was in partial remission and that her affect was only mildly depressed; and with Desmonde's evaluation notes, which recorded that plaintiff's memory and concentration were adequate.  AR 21.  These were all sound reasons for rejecting Springs's opinion.

C.  <u>Physical Impairments</u>

Plaintiff contends that the administrative law judge erred in determining that she did not meet Listing 1.04A, Disorders of the Spine.  To meet this listing, plaintiff must have a spinal impairment with evidence of nerve root compression.  20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff argues that her "treating physicians have noted in the record that Plaintiff suffers from degenerative disc disease and disc herniation that also compresses a nerve root," but she does not support this assertion with any citation to the record.  In fact, contrary to plaintiff's assertion and as noted by Mulhausen, plaintiff's treating doctors found in May 2000 that plaintiff's herniated disc had resolved with therapy and that she had *no* compression of the nerve root.  AR 199.  Plaintiff has not cited to any evidence to contradict this evidence or to otherwise call into question Mulhausen's opinion that plaintiff's back impairment did not satisfy the criteria of a listing.   Plaintiff's contention that the administrative law judge did not properly consider whether she met a listing is unfounded. <u>Scheck v. Barnhart</u>, 357 F.3d 697, 701 (7th Cir. 2004) (when plaintiff fails to present any evidence to contradict opinions finding that plaintiff does not meet listing, remand unnecessary even if administrative law judge provides only perfunctory analysis of listing question).

Plaintiff also contends that the administrative law judge failed to properly evaluate the evidence in the record that she was obese, as required by Social Security Ruling 02-1p:

18

Policy Interpretation Ruling Titles II and XVI:  Evaluation of Obesity, 67 Fed. Reg. 57859

(2002).  In this case, the administrative law judge found plaintiff had the severe impairment

of obesity but did not make any specific finding as to how it affected her residual functional

capacity.

The Court of Appeals for the Seventh Circuit has held that "a failure to explicitly

consider the effects of obesity may be harmless error."  Prochaska v. Barnhart, 454 F. 3d

731. 736 (7th Cir. 2004).  In Prochaska, the court found that because the administrative law

judge's decision was predicated upon the opinions of physicians who discussed the plaintiff's

weight, and because plaintiff had not pointed to any evidence suggesting that her obesity

significantly aggravated her physical impairments or contributed to her physical limitations,

the administrative law judge's failure to comply with SSR 02-1p was harmless.  Id.  The

court reached the same conclusion in Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir.

2004), explaining:

>   Any remand for explicit consideration of Skarbek's obesity
>   would not affect the outcome of this case.  See Keys v. Barnhart,
>   347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error
>   review to ALJ's determination).  Notably, Skarbek does not
>   specify how his obesity further impaired his ability to work, but
>   speculates merely that his weight makes it more difficult to
>   stand and walk.  Additionally, the ALJ adopted the limitations
>   suggested by the specialists and reviewing doctors, who were
>   aware of Skarbek's obesity.  Thus, although the ALJ did not
>   explicitly consider Skarbek's obesity, it was factored indirectly
>   into the ALJ's decision as part of the doctor's opinions.

19

As in <u>Skarbek</u> and <u>Prochaska</u>, no harm was done because of the administrative law judge's failure in this case to consider plaintiff's obesity explicitly in determining plaintiff's residual functional capacity.  It is clear from the decision that the administrtaive law judge was aware of plaintiff's obesity, insofar as he found it to be a severe impairment.  Further, Mullhausen considered plaintiff's obesity when he found that she could perform light work with a sit or stand option with only occasional stooping and very occasional climbing with no ramps, stairs, scaffolds, ropes, balancing, crouching or crawling.  The administrative law judge relied on this opinion in fashioning plaintiff's residual functional capacity.  Finally, although plaintiff makes the general assertion that her obesity aggravates her other impairments, she points to no evidence to support this contention or suggest how she is limited by her obesity.  For these reasons, it would be pointless to remand this case for explicit consideration of plaintiff's obesity.  <u>Gentle v. Barnhart</u>, 430 F.3d 865, 868 (7th Cir. 2005) ("Once [obesity's] causal efficacy is determined, it drops out of the picture.").


D. <u>Mental Impairments</u>

Plaintiff contends that the administrative law judge erred in evaluating her mental impairments.  Like her other challenges, most of plaintiff's arguments are difficult to follow.  As for the arguments that are at least somewhat developed, none of them is persuasive.  Plaintiff asserts that in evaluating plaintiff's daily functioning, the administrative law judge

20

erred by stating that plaintiff raises and shows dogs, when all she said was that she *wants* to raise and show dogs.  However, as the administrative law judge indicated, plaintiff reported to Desmonde in June 2005 that she was raising and showing a dog.  In any case, plaintiff's dog-raising activity was just one piece of evidence among many that the administrative law judge considered in finding that plaintiff's daily functioning was only mildly limited.

Plaintiff also argues that the administrative law judge erred in finding that her minimal daily activities showed her capable of engaging in substantial gainful activity.  See Zurawski, 245 F.3d at 887 (ability to perform a daily routine and sporadic diversions does not refute a claim of disability); Clifford, 227 F.3d at 872 (same).  Although it is true that administrative law judges should be careful not to place "undue weight" on a claimant's household activities in assessing her ability to hold a job outside the home, "[s]ome weight is appropriate."  Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006).  Plaintiff does not develop this argument apart from suggesting that the administrative law judge "allowed his finding regarding daily activities to bleed into his finding regarding Plaintiff's ability to function socially."  In fact, the administrative law judge's decision makes it plain that he properly focused on plaintiff's relationships with others and her ability to get along in evaluating plaintiff's social functioning, not on her daily activities.  Further, plaintiff has reported to various health professionals activities that are not "minimal," including gardening, taking care of her dogs and taking care of her farm animals.

21

Plaintiff's contention that the administrative law judge did not adequately develop the record fails as well.  An administrative law judge does not need to recontact a medical source or call a medical expert unless he is unable to determine whether the claimant is disabled.  20 C.F.R. § 404.1512(e) (administrative law judge will recontact medical source when evidence is inadequate to determine disability); 20 C.F.R. § 404.1519a(b) (administrative law judge may order consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim"); 20 C.F.R. § 404.1527(f)(2)(iii) (administrative law judge may ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment).  Here, the administrative law judge had the benefit of the opinion of two state agency psychologists, Desmonde's consultative report and records from plaintiff's mental health treatment at the VA hospital to help him evaluate plaintiff's mental functioning.  The evidence of record adequately supported a finding of not disabled.  The administrative law judge acted within his discretion in deciding not to seek further medical information in making his step three and four findings.  Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994) (court "generally respects the ALJ's reasoned judgment" regarding how much evidence needed to make finding about disability).

E.  Credibility and Residual Functional Capacity Assessment

The determination of residual functional capacity is an assessment of what work-related activities plaintiff can perform despite her limitations.  20 C.F.R. § 404.1545(a)(1). It must be based on all of the relevant evidence in the record, including the plaintiff's own statements of her limitations.  Id.

Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska, 454 F.3d at 738; Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck, 390 F. 3d at 505.

The administrative law judge's credibility determination in this case passes these tests. He considered the medical evidence in the record, the testimony of the medical expert, the

reports of consulting doctors Dohlman, Perry and Desmonde, plaintiff's daily activities, her medications and their side-effects and her work history.  AR 17-22.  Specifically, the administrative law judge found that although plaintiff reported using a walker, there was no record of her need for such an assistive device to walk.  He also considered evidence that plaintiff's pain was well-controlled by taking MS contin and that she had reported no medication side effects to her treating physicians.  AR 19, 21.  Further, he found that plaintiff's full range of daily activities, including caring for her animals, gardening and going to dog shows, supported a finding that she could perform light work with brief changes in position.  AR 20.  In finding incredible plaintiff's testimony that she had memory problems, the administrative law judge considered medical reports that her memory was good and that she denied memory difficulties.  AR 18-19.  Each of the administrative law judge's findings is supported by the record; each was a valid reason for finding that plaintiff's subjective complaints were not entirely credible.  Because the administrative law judge built an accurate and logical bridge between the evidence and his conclusion and gave specific reasons for his determination that are supported by the record, this court may not disturb the administrative law judge's credibility finding.

Finally, plaintiff argues that the administrative law judge failed to consider her back impairment in assessing her residual functional capacity.  As plaintiff acknowledges, the administrative law judge relied heavily on Mulhausen's opinion in determining plaintiff's

24

residual functional capacity, and Mulhausen accounted expressly for plaintiff's back impairment.  Further, the administrative law judge's detailed assessment of the medical evidence, plaintiff's subjective complaints and the medical opinions makes plain that he accounted for plaintiff's back impairment by allowing for position changes every hour and by adopting a number of postural limitations, including limitations on bending, stooping and crouching.  Overall, the administrative law judge's assessment and discussion of the evidence were accurate and thorough. Substantial evidence in the record supports his conclusions. There is no reason to remand this case.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Pamela J. Graffice appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 7th day of April, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge